I may please the court. Counsel, good morning. I'm Bill DiAlto and I represent Pine Bar in this matter. I'd like to reserve three minutes. Okay. And the clock counts down. This matter has been extensively briefed. However, I wanted to start out the argument with an issue that recently arose last spring when the United States Supreme Court decided to ban v. Patchett. The district court dismissed based on jurisdiction. And one of the critical issues in the case is whether the Quiet Tidal Act and the Indian exception to the Quiet Tidal Act would prevent the district court from hearing matters of a road that crosses the Wind River Reservation. Justice Kagan in Patchett said or answered that question saying the Quiet Tidal Act means just that, quiet tidal. And therefore, if the issue is outside of the Quiet Tidal Act, it would not pertain, it would not exclude jurisdiction from the district court. And the only reason I bring that because the government has argued that essentially, the government, has argued that the Quiet Tidal Act is broader than that, citing Metropolitan from this circuit. I think there was at least a plausible argument before this case, but I'm speaking only for myself. I think that argument is now gone. Okay. Thank you. And I don't speak for the others on the bench, but yeah. Right. All right. You might. You might. Go ahead. Then I'd like to address the other critical matter in this case, whether, if it's gone, then we're requesting the court send it back for the district court to hear such issues in the case. That is, if the court has jurisdiction. I've got a question for you. Have you been litigating this from the beginning? Five years, Your Honor. Why did you not mention when you had a decision from the Wyoming Supreme Court, why didn't you mention that decision when you come to the BIA? Because, Your Honor, first of all, I didn't litigate the Wyoming part. That was not. But you were the lawyer representing when you came in front of the BIA. Right. So you knew about it. I did know about it. So why didn't you mention it? I never considered it to be the same issue. I really have never considered it to be the same issue. Two separate issues. And tell me why those are different issues. Because the Wyoming Supreme Court, and I believe in their opinion, they said, we don't tell the federal government what to do. The Wyoming Supreme Court only. Well, let me back up. The county commissioners in that county, Fremont County, said it is a public road. They did. They said it's a public road. It was appealed. The Wyoming Supreme Court then said, based on Wyoming's statute, and based on the record we have in front of it, it's not a public road. But they discussed some federal law, too, in the course of the opinion. A little bit, yeah. But they based their opinion on Wyoming's statute. Well, because they said they can't interpret, make any binding interpretation of the Conservation Act, but they certainly talked about it. Yes, they did. But their ruling would not be binding. Well, that doesn't stop state courts from opining on what they interpret or think the act covers. So it certainly may be persuasive authority. Right. To this extent, to this extent, that Wyoming talked about a statute of particular, we're talking about a federal statute that is particular to federal issues. Was that federal issue raised in front of the Wyoming Supreme Court? Yes, it was. But they did not make any formal finding on it. Well, I'm not sure that that's right. It depends a little bit on how you read it. I'm entirely sympathetic with the idea that the Wyoming Supreme Court has either no power or very limited power to tell the federal government what to do. Right. But, of course, in common with state courts, it has a lot of power to tell us what federal law is. Yes. I agree with that. Where we disagree, where we may not disagree, I don't believe they made an interpretation of federal law in this case when I read that decision. Could they have decided that it was a private road under the Wyoming private road statute if they had looked at the CCC Act and decided that under the CCC Act it's public? If they'd made that determination, it would have been a public road. In other words, is it essential to their ultimate determination under the state statute that they looked at that? No, it's not. It's not essential that the CCC stands on its own. They can make a determination, if I'm understanding your question right, regarding the Wyoming statute as it pertains to that section of the road in Fremont County. But once you're in federal jurisdiction and there are issues that only concern federal law, they can make an interpretation of that, certainly. Yes, I agree with your premise. They can make an interpretation of federal law. However, I believe they did not make that proper interpretation. So you're disagreeing with their interpretation? Are you saying that they did interpret the federal law? The record wasn't fully made. When I read that opinion, the record was not fully made, and they did not make a final interpretation over the CCC. But if the record's not fully made, whose fault is that? That I can't answer. Well, I would think it would be the plaintiff. I wasn't part of that case. Well, I understand that, but your client was. It's your client. Your Honor, when I started this case, I looked at the decision from Wyoming Supreme Court. I haven't looked at anything else. Just when I looked at the federal law, it looked completely different, the two issues. So what is it about the Conservation Act that supports your theory? Excuse me, Your Honor. What is it about the Conservation Act that supports your theory? Or does it say it has to be public use? Yes. When Congress passed the CCC in the 1930s, Congress was clear that in the language of the Act that any projects funded by public money would be for public use or public utility. No, no, it doesn't say public use. Public utilization. It says public interest or utility, doesn't it? Right. Public interest or utility. And didn't the Wyoming Supreme Court say clearly of public interest is forest management and fire road access. That's in the public interest, is it not? That is in the public interest, Your Honor. We believe the – That doesn't mean public use of the road. It's in the public interest, but a fire road, you don't get public – constructed or created with CCC labor and money, is that correct? Not according to the BIA. So if CCC creates a fire road through federal lands or crosses over any private lands, that has to be open to the public? I believe – well, the BIA stated in the McAdams decision when Mr. McAdams put a gate across the road that because CCC funds were used to build this road, he could not put a gate across the road. That was part of the BIA's reasoning in McAdams. So, you know, we didn't bring this argument out of the clear blue. We had some sort of indication from the BIA itself that this was an interpretation of the CCC. Well, the BIA has now told you that this is, in their view, not a public road. They have, and we have responded in a brief that it's an inconsistent statement by the BIA, inconsistent position by the BIA in that respect. Well, inconsistent position, but you've got a ruling from the BIA that says this is not a public road. That's right. We've got a ruling from the superintendent and then the acting regional director. Their ruling was based on the concept that they couldn't find the easement documents for this, that it wasn't part of the IRR inventory and, therefore, it wasn't a public road. They couldn't find it. You hadn't presented either. I can't find them. Yeah. I mean, the record retention wasn't the best, and we believe they were out there, but we don't know where they are nowadays. Well, and then the BIAI. IBIA? That one, yeah. Interior Board of Indian. They say they don't have jurisdiction. Right. They don't say that the regional director of the BIA didn't have jurisdiction. Right. They just say they don't have jurisdiction. Correct. I agree with that. So it's possible that you've gone as high as you can go within the administrative system and you got a negative decision. That's correct. And so should we treat that negative decision as basically an ordinary administrative review? We look at the record and see if, you know, assuming we can get to the merits, we just look at the record and see if it's an abuse of discretion? That's a great question. And you could. Should we? I'm trying to figure out if we do get to the merits of this lawsuit, I'm trying to figure out what's at issue, what are we looking at, what are we reviewing, what law do we apply, what standards? I mean, this case floats around for me. It floats, yes, I agree. You could, but, you know, I was preparing for this hearing and then I read a case called Alaska v. EPA where this circuit actually raised that exact issue, whether they could review the administrative record, essentially de novo, and decide the merits of the case. And the justice said that, yes, we could do that, but we need the full record and we want an affidavit from the administrative agency to present that full record, to at least verify we have a full record, administrative record in front of us. And I think they gave them the amount of time to do that. Well, but typically, and this is not quite a typical case, but typically if we're reviewing something under the APA, we're looking at what the agency did and we review it for abuse of discretion. That's correct. Why is that? If we do get to the merits of the decision by the regional director of the BIA, why is that not what we should be doing? I mean, I'm not sure we should be deciding this de novo when an agency of the federal government has already looked at it and decided it adversely to you. Right. And I agree you could do that. You could. Yes. Could I get another? I didn't want to go there. No, no, please. Are you making on your constitutional claim, are you framing or is it in substance a takings claim or a due process claim? A due process claim. And the reason, on page 20 of our brief, you see the road in the map. You see the road goes through my client's property. It's on the reservation. We have a real imminent threat of a trespass citation. We'll be in front of Magistrate Article 3. The neighbors can use the road. However, my client is under this threat. So it's been that way. The road's been used for 70 years like that until the last five years. So we have raised a due process claim. But do you have any constitutional claim unless and until it's decided that it's a public road under the CCC Act? I mean, in other words, unless it's determined that it is a public road under the CCC Act, where's the constitutional claim? If it's a private road, if they correctly determined that. Well, the constitutional claim would be, I'm not sure I'm understanding. Well, as I read your briefs, whenever you referenced constitutional claims, it was always on the basis that this is a public road and therefore we have a constitutional due process claim or it looked like a takings claim was also identified. And it was all premised on because this is a public road. So if it's not a public road, and the basis for saying it's a public road is the CCC Act, that's what you've pointed to. So that's the preliminary determination before you ever get to a constitutional issue. I agree with that. Almost out of time. That's okay. We'll go as long as we need to understand this as best we can. But I don't quite understand a takings claim that is to say you want a declaration that this is a public road. Correct? We want the statute interpreted as it originally was intended, the CCC statute. No, to answer my question, I'm sure, the ground I'm on, you want this to be a public road, is that right? Yes. Yes, absolutely. And if it's a public road, does some of that road come across your client's property? Yes. That means the public could come across that. And they do. Okay. But that's not a taking because that's what you're asking for. Is that right? Right. I mean, you're not objecting to that. No, we're not. That's what you want. Right. We're not objecting. And the reason you want this to be a public road is so that the other people don't get an easement of necessity across your property on another route, right? No. And that's what you're after. No, I disagree with that. Why do you want it to be a public road then? Because, first of all, it does provide access to my client's property. You know, it provides access. Suddenly, if my client can't use it, it comes in one end, goes out the other. My client would also like to use that road as it goes into other areas of the reservation. There's no doubt about it. He can't argue easement. Does he have no other access to his property than that road? He has a private driveway. So he has access. He has road access to this vehicle access to the property. Yes. To the lot. But the road itself is in a different area. But as I'm trying to understand sort of the motivation for the litigation, and you can correct me if I'm wrong, as I understand it, the motivation for the litigation is you want this to be a public road so that the people on the Elkhart Ranch can get access on that road to their ranch. Is that right? That's not my basis for the litigation. No. Somehow I've been misled on this one. Yeah. That's not my basis whatsoever. My basis for the litigation is that the CCC, based on the Act of Congress, means this is a public road. No, no, no. I'm not asking your legal basis. I'm trying to figure out why you want this. Practical reasons. Yeah. That's not my understanding. That's not my belief. So what is this about all this in the record about access for the Elkhart Ranch? I mean, there's a lot of stuff in the record about this. There is. A lot of that was put in by the BIA. We didn't think it was necessary. Well, tell me what's going on with respect to the Elkhart Ranch then. I don't know. Did your client not care about this? I mean, there's something screwy here I don't understand. Yeah, no. I have no idea, Your Honor. Again, when I'm putting this together, it's not something that I thought was necessary or directly related to this case. That's the background in the Wyoming Supreme Court case, though, correct? It is. It is. And so that's how all of this was initiated. So unless the rationale has changed from when this first started back in 2007. That's how the state was initiated, right. And you were requesting essentially the same thing there as you're requesting in this litigation, which is to have Sorel Creek Road declared a public road. Right, right. That's correct. But regarding where that sitting here today, I can't tell you what's going on with the road and what is on those issues. There's a whole separate attorney on that. Now, you are appellants in front of the IBIA, correct? Correct. Okay, I'm reading from the IBIA decision. I know. It says, we view the status of the road as a pivotal issue in a Fremont County proceeding in which nearby landowners, Helen and Homer Luther, seek to establish a new road up north for a county owner under the Wyoming Private Road Statute. That's correct. You're arguing this to the IBIA, I guess? I did argue that. The IBIA did its own research. They pulled that up themselves. Well, I've not gone back to look at the document that they're quoting, but the IBIA, and I'm on page 52, IBIA 65, appellants explained their interest in the manner as follows, colon, indentation, quoting language. Finally, we, that is to say appellants, we view the status. Are you trying to walk away from all of that? No, I'm not trying to walk away from it, Your Honor. Again, it was not the key issue into the matters that I brought. It really wasn't. But were you the lawyer trying to litigate in front of the IBIA? We submitted. Is that an erroneous quotation? You didn't write that? I don't. I remember the IBIA brought up Pine Bar on its own. They say they're quoting you. Are they wrong? Are they quoting somebody else? I would have to look at that, Your Honor. Okay. Well, let's hear from the government. Okay. Thank you. Thank you. May it please the Court, Alan Brabender on behalf of the federal defendants. It's important to note initially why the government is part of this lawsuit, and that is because Pine Bar lost a dispute before the Wyoming Supreme Court. The Wyoming Supreme Court has already decided that Sorrel Creek Road, which runs through the Indian Reservation, is a public road. Having lost this issue before the Wyoming Supreme Court, Pine Bar then concocted this lawsuit to get a different result from the federal courts. And in resolving the APA claim that is before this court, the Doctrine of Collateral Estoppel and the Federal Full Faith and Credit Act requires this court to give preclusive effect to the Wyoming Supreme Court's binding and final judgment that the road is not public. Oh, I'm sorry. Go ahead. No, please, please. So if the Wyoming Supreme Court characterized the issue before it as whether or not the Board of County Commissioners erred when it determined that the road was a public road for purposes of the Wyoming private road statute, doesn't that narrow what it was that they were deciding? Were they deciding whether it's a public road under the CCC Act? Well, it's true that a different cause of action was raised in the state courts than what is before this court. But collateral estoppel, the very purpose of it, is to preclude the relitigation of issues across different causes of action. So it makes no difference that a different claim was raised before the Wyoming Supreme Court, as is being raised here. Well, that can't be quite right in the way you said it. For collateral estoppel, it has to be the identical issue. So if you say it doesn't matter that it's different, no, it does matter. Well, the issue has to be the same, but the claim can be different. I see. Okay. But I'm trying to follow up on Judge Tucker's question. Tell us why the issue is the same, because it looks as though they might have been deciding only whether it was a public or private road under Wyoming law. Well, it is the same, and I think you can look. The Fremont County Board of Commissioners found that it was a public road because it was built pursuant to the Civilian Conservation Corps Act. That is what the Wyoming Supreme Court says in one of the footnotes of its opinion. Now, the Wyoming District Court reversed the Fremont County Board and found that despite the fact that it was built pursuant to the Civilian Conservation Corps Act, it was not a public road, and the Wyoming Supreme Court affirmed that result. The same legal issues regarding the Civilian Conservation Corps Act, at least similar if not identical issues regarding the Civilian Conservation Corps Act, were raised before the Wyoming courts, and similar if not identical evidence was presented to the courts. And you can see from the Wyoming Supreme Court opinion that the Wyoming Supreme Court was relying on the same evidence that Pine Bar has presented to this court in its further excerpts of record as to why it believes the road is a public road. So the exact same issues were litigated in the Wyoming court. How long have you personally been involved in this case? I'm trying to, I mean, obviously we've got some history here, and I'm trying to sort it out. I've only been involved in this appeal, Your Honor, so a year and a half. Now, we raised this collateral estoppel issue before the district court, but the district court didn't rule on collateral estoppel but instead found there is no applicable waiver of sovereign immunity under the APA. And the district court was right. There is no waiver of sovereign immunity here under the APA. Now, I have trouble with that. I mean, I think Quiet Title Act is off the table. Do you agree with that now? No, we do not agree with that. We think Patch Act is distinguishable, but we do recognize that there is considerable uncertainty after Patch Act. But the court doesn't have to resolve the Quiet Title Act issue here because of the other threshold issues, the collateral estoppel issue and the APA issue. Well, we have no jurisdiction. We have no jurisdiction. Correct. So that means? We would ask this court first to address collateral estoppel, then the APA, and if there's anything left, then the Quiet Title Act. But if there's no jurisdiction, how do we get to collateral estoppel? Well, I think it's the Supreme Court's decision. I think it's SINOCHEM, S-I-N-O-C-H-E-M, says that as long as the threshold issues are addressed before the merits issues, a court can address the threshold issues in any order. Okay. Well, let me ask you this. I'm the assumption that the Quiet Title Act does not bar jurisdiction here. So let's get to the question of jurisdiction under the APA. I have trouble seeing how there's no jurisdiction to bring suit under the APA. We do APA suits all the time challenging determinations made by federal administrative agencies. We've got a decision from the regional director of the BIA that denies relief. I mean, rules in your favor. This case comes up in an odd posture, but it seems to me at least feasible to look at this as a de facto challenge to what the BIA has already decided. Well, it is our position that the BIA hasn't decided anything. So who's decided? What status then does this ruling by the regional director of the BIA have? Any? No. All the BIA said is our records cannot confirm that the road is public. It was relaying the state, the letter relayed the state of the agency's records. We do not believe that constitutes final agency action under the APA. First, because it's not agency action. It's not a rule. It's not an order. It's not a license. I'm just reading to you a paragraph. This is in the decision of the, from the Bureau of the Indian Affairs Rocky Mountain Regional Office. One, two, three, fourth full paragraph. It's very short. Based upon the information provided, I am upholding the superintendent's decision that the unpaved remainder is not a public road. That sounds like a decision on the merits. Now, he may be wrong in saying he's upholding the superintendent's decision because I'm not sure the superintendent decided it. But it's quite clear that they're deciding it. Well, I think that's some unfortunate language, but. Well, yeah. I mean, it still doesn't mean the superintendent made any decision. But he simply said a letter relaying the state of his records. I am upholding the superintendent that it is not a public road. That sounds like a decision. If I were writing a decision, that's the language I would use. That does sound like a decision, but the superintendent did not make a decision here regarding. But it sounds like this guy is making a decision. I don't think he is. Like I said, I think that's some unfortunate phrasing. Yeah, it is unfortunate if you're trying to say he didn't make a decision. The superintendent did not make a decision. What he said, what the superintendent said, all this information was helpful. It does not indicate that the Cerro Creek Road is a public road. So I guess one construes documents together. All right, Your Honor. Assuming that there is an APA waiver of sovereign immunity here, we would ask this court to address the matter. I wasn't disagreeing. I was just reading the records. So we had them both together. I have to say this case is a bit of a tangle. I'm having trouble fitting it into the ordinary categories that I carry around in my head. Right. I agree. Frankly, I would have briefed this case much differently had Patchak come out differently and probably would have addressed the APA claims in more detail. But that being said, again, I will reiterate, we do not believe there is final agency action here because it's not agency action. And even if it is agency action, the letter I'm referring to, it's not final because there's no legal consequences flow from that letter. To the extent the road is closed, it's not because of the letter. It's because of the actions of the tribes, the Shoshone and Arapaho tribes. It is the tribes that have declined to include the road. But had you decided otherwise, the tribe would not be allowed to close the road. Isn't that right? Well, I guess that's right, but the BIA would not have made that decision because it is a decision for the tribes as a sovereign. The tribes have every right to exclude non-Indians from their reservation. Unless it's a public road. That's right. We're back where we were. And they say it's not a public road, therefore the tribe gets to close it off. Right. It seems to me to have a real-world consequence. Well, with that, let me address the merits. There is one discrete legal issue before this Court, and that is whether or not the Civilian Conservation Corps Act, using funds pursuant to that act, renders the road public. And it doesn't. The Civilian Conservation Corps Act was a statute passed during the Great Depression as part of FDR's New Deal program, and its stated purpose was to employ the unemployed, to create jobs. It was not intended to create rights-of-way, let alone rights-of-way across Indian trust lands. Now, we believe the statute's purpose is clear, it's to employ the unemployed and not to deprive Indians of property rights. But at best, for Pine Bar, the act is ambiguous. And pursuant to the Indian canon of construction, any ambiguity in a statute must be read in favor of Indian interests. Any legislative intent to deprive Indians of property rights must be explicitly stated in the statutory text. And, of course, there is no explicit intention expressed in the Civilian Conservation Corps Act. The district court thought it didn't have jurisdiction. Would we be deciding whether the CCC Act makes this a public road, or would we be sending it back? No, it is the government's position that this court should address the discrete legal issue before it. It would be, in our view, a waste of judicial and government resources to send this back. Assuming we have jurisdiction. Right. That is true. Now, Pine Bar's claim is based on a number of historic documents  and a couple things I'd mention about those documents. First, the issue before this court is one of statutory interpretation and congressional intent. And the views of individual Indians or BIA field agents are not relevant to the issue of congressional intent. Second, the documents do not say what Pine Bar purports them to say. What the documents show is that both the BIA and the tribes intended Sorrel Creek Road to serve the livestock grazing and fire suppression needs of the Wind River Indian Reservation and those Indians living on the reservation. To the extent it is ever mentioned that the road serves a public purpose in those documents, it is clear from reading those documents in context that what the BIA and tribes thought is that the road would serve the entire Wind River Reservation, not just individual Indians. There is nothing in those documents that shows that the tribes thought they would be deprived of the right to exclude non-Indians from the reservation if they accepted these funds. And with that, Your Honor, well, I guess one more thing. Plaintiffs mentioned the McAdams case. And we believe that case is distinguishable because, first of all, McAdams was an Indian who owned Indian trust lands. And the road which he put a gate across was an Indian reservation road. That's a type of road that the tribes received federal funding to maintain in exchange for it being public. And Sorrel Creek Road is not an IRR road. It's not a public road. Also, with regard to the Civilian Conservation Corps Act, what the BIA said in McAdams was, McAdams, you didn't build that road and your predecessors didn't build that road for a private purpose. It was built for a public purpose pursuant to the Civilian Conservation Corps Act. So the entire reservation community had the right to use that road. But Pine Bar is not an Indian entity. Pine Bar's owners are not tribal members, and they have no right, and the public has no right to access a reservation road that's not open to the public. And with that, Your Honor, do you have any other questions? Okay. Thank you. Thank you. Now, we've taken you over time, but we'd like to give you two minutes to respond. Okay. Thank you, Your Honor. I did read just what you had quoted, and yes, that is my writing. It is also unfortunate language at the end there. We started out with it was important to the Pine Bar Ranch and then went down from there. I'm just trying to figure out what's, I mean, you like to know who wants what and why they want it. And standing here, I can't answer all those questions for you because I don't know. Okay. Here's the problem with the BIA's argument. When Sorrel Creek was built, there was deeded property. There was allotted property. There was government property. And when they put that road how many miles through deeded, allotted, and governed property? They ran it over Pine Bar Ranch, knowing that non-Indians owned the property. And therefore, there was, had to be, had to be, and this is where this Court's going to have to look at all the documents and how those documents, what interpretation the Court gets from those documents. Well, when they put the road over deeded property not owned by Native Americans, certainly they had an understanding that when that consent was given by the deeded property owner, that they would get a benefit from the use of that road. But that's far from saying it's a public road. That says access by the owners of that property. Yeah, that's right, Your Honor. I agree with that. However, once you get in, this is where we're down to what is, what do they mean by public? I agree. What do they mean by public? And you have to look at all those documents and look at the legislation and determine what is the intent of Congress. I mean, we have CCC projects all over Montana. We have dams. We have everything. Without them, we'd be in trouble. I understand. Okay. Thank you very much. Thank both sides for your arguments. All right.
judges: Tucker, Fletcher, Fisher